**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

SHARI A. LIND,                                     )
                                                   )
              Plaintiff,                           )
                                                   )        No. CIV 13-032-TUC-CKJ
vs.                                                )
                                                   )        **ORDER**
UNITED STATES OF AMERICA,                          )
                                                   )
              Defendant.                           )
_____)

Pending before the Court is resolution of the discovery dispute between the parties. Counsel presented argument to the Court on June 24, 2014. Pursuant to order of the Court, counsel have supplemented their arguments by providing case law support for their positions to the Court's staff. The Court took the matter under advisement and issues its ruling herein.

*Supplemental Authority Submitted by Counsel*

The Court directed counsel to submit any case law they wished to present to the Court by June 26, 2014. Counsel have each submitted case law in support of their positions. Counsel for Defendant United States of America ("the government"), however, also included argument distinguishing authority submitted by counsel for Plaintiff Shari Lind ("Lind"). As the Court did not direct counsel to respond to opposing counsel's submission and is not providing Lind's attorney a similar opportunity to respond to the government's case law, the Court does not consider defense counsel's argument distinguishing the case cited by Lind in issuing its decision herein.

*Discovery of IME Reports*

Lind requests the independent medical examination ("IME") reports, with some limitations, authored by Dr. Eskay-Auerbach at the request of the government be disclosed to Lind.[1]  Lind asserts the disclosure is appropriate to allow Lind to look into the potential bias of the expert.  The government asserts disclosure is precluded by HIPAA, privacy, and privilege.

*Health Insurance Portability and Accountability Act of 1996*

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") restricts health care entities from disclosure of "protected health information" ("PHI").  Regulations authorized by the HIPAA, 42 USC § 1320d et seq., prohibit ex parte communications with health care providers regarding patients' medical condition without their consent or a "qualified protective order." 45 CFR § 164.512.  HIPAA's privacy provisions allow for disclosure of medical information in the course of administrative or judicial proceedings; however, the Act places certain requirements on both the medical professional providing the information and the party seeking it. *See* 45 C.F.R. § 164.512(e) (2004).  However, this only applies to "covered entities."  A covered entity is a health plan, a health care clearinghouse, and "a health care provider who transmits any health information in electronic form in connection with a transaction covered by [the] subchapter. 45 CFR § 160.103.

The government argues that the basis of the IMEs was the providing of information to Dr. Eskay-Auerbach – it appears that, at least as to some cases, the information provided to the doctor was subject to protective orders or confidentiality clauses.  In other words, the IMEs in possession of the government contain information pursuant to prior HIPAA protective orders.  There is no basis to conclude that defense counsel is no longer bound by those HIPAA protective orders.  The Court, therefore, will discuss HIPAA's application.

---

[1]Counsel for Defendant pointed out that, although the request appeared on its face to be directed to the United States of America, the defense also provided a list of cases in which Dr. Eskay-Auerbach had been retained by co-counsel's firm.

1    Another district court has stated:

2       HIPAA does not create substantive rights that act as a bar on discovery. It merely
        establishes procedural mechanisms which have been complied with in the instant
3       case. HIPAA regulations is purely procedural in nature and does not create a federal
        physician-patient or hospital-patient privilege. *Northwestern Memorial Hospital v.*
4       *Ashcroft*, 362 F.3d 923, 925-926 (7th Cir.2004).  The private information could be
        redacted.  HIPAA does not preclude production where an adequate protective order
5       is in place.  45 C.F.R. § 164.512(e).

6    *Allen v. Woodford*, CV-F-05-1104 OWW LJO, 2007 WL 309485 *11 (E.D.Cal. 2007).  The

7    protective order must prohibit "using or disclosing the protected health information for any

8    purpose other than the litigation," and "[r]equire [ ] the return to the [physician] or

9    destruction of the protected health information ... at the end of the litigation or proceeding."

10   45 C.F.R. § 164.512(1)(e)(v).

11       Therefore, if the Court determines disclosure of the IMEs is appropriate, HIPAA

12   provides a mechanism to protect the information included within the disclosure.

13

14   *Privacy Concerns*

15       Federal courts generally recognize a right of privacy that can be raised in response to

16   discovery requests. *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir.1992);

17   *DeMasi v. Weiss*, 669 F.2d 114, 119-120 (3rd Cir.1982).  Unlike a privilege, the right of

18   privacy is not an absolute bar to discovery.  Rather, courts balance the need for the

19   information against the claimed privacy right. *Ragge v. MCA/Universal Studios*, 165 F.R.D.

20   601, 604 (C.D.Ca. 1995) (right of privacy may be invaded for litigation purposes).  A

21   patient's constitutional right of privacy in receiving medical treatment may be an alternative

22   source of protection to the physician-patient privilege.  However, this right is not absolute.

23   *Doe v. Southeastern Pennsylvania Transp. Authority (SEPTA)*, 72 F.3d 1133, 1138 (3rd

24   Cir.1995) (privacy right in patients' prescription records); *see Caesar v. Mountanos*, 542 F.2d

25   1064, 1067 (9th Cir. 1976).

26       Moreover, the government asserts 5 U.S.C. § 552a restricts the disclosure.  Lind

27   argues the records covered by the Privacy Act do not apply.  However, the documents appear

28   to fall within the definition of a "record" as defined by the Privacy Act.  *See* 5 U.S.C. §§

552a(4) and (5); 37A Am. Jur. 2d Freedom of Information Acts § 364 (May 2014).  Further, although the Privacy Act provides that a disclosure may be made pursuant to a court order, such an order is subject to a determination that the disclosure is appropriate pursuant to Fed.R.Civ.P. 26.  *See e.g.*, *Ford Motor Co. v. United States*, 825 F.Supp. 1081, 1084 n. 3 (CIT 1993).

Therefore, if the Court determines disclosures of the IMEs is appropriate under Fed.R.Civ.P. 26, the Privacy Act provides a means (i.e., issuance of a court order) to permit the disclosure.

*Physician Patient Privilege*

The government acknowledges there is no technical physician patient relationship between Dr. Eskay-Auerbach and the subjects.  However, the government asserts the materials include summaries that were disclosed pursuant to a waiver of a valid privilege. Lind asserts once the privilege is waived (in the prior litigation), there is no longer a privilege to assert.  Courts have not uniformly determined the effect of a waiver on subsequent litigation. *See* 81 Am. Jur. 2d Witnesses § 473 (May 2014).  The Court finds significant that the subjects of the IMEs are not involved in this litigation.  The Court declines to extend any waivers of the physician-patient privileges of the subjects to this litigation.

*Disclosure Pursuant to Fed.R.Civ.P. 26*

The applicable rule provides that disclosure related to an expert must includes "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition[.]"  Fed.R.Civ.P. 26(a)(2)(B)(v).  Further, the rule addressing the scope of discovery provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All

1   discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

2   Fed.R.Civ.P. 26(b)(1).   "The party who resists discovery has the burden to show that

3   discovery should not be allowed, and has the burden of clarifying, explaining, and supporting

4   its objections."   *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.Cal.1998);

5   *Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 104 (D.N.J.1990).

6   "Rule 26(b) does not mandate the disclosure of any additional reports that the expert

7   may have prepared."   *Surles v. Air France*, 2001 WL 815522 *7 (S.D.N.Y. July 19, 2001).

8   Indeed, "[b]y implication, because the rule requires only the production of a *list* of the

9   expert's cases, [the requesting party] is not entitled to disclosure of the reports [prepared by

10  the opposing party's expert in cases in which the expert had testified over the last four years],

11  regardless of their subject matter."   *Id.*, *emphasis in original*.   Further, Lind is speculating

12  that such evidence may be relevant (i.e., that it may show bias).   As another district court has

13  stated:

> If the inference to be drawn from the evidence is the result of speculation or
> conjecture, the underlying evidence is not relevant.   *See Engstrand v. Pioneer
> Hi–Bred Int'l*, 946 F.Supp. 1390, 1396 (S.D.Iowa 1996). "[T]he standard of relevancy
> is not so liberal as to allow a party to . . . explore matter which does not presently
> appear germane on the theory that it might conceivably become so."   *Food Lion v.
> United Food & Comm'l Workers Union*, 103 F.3d 1007, 1012–1013 (D.C.Cir.1997).

*Anderson v. Hansen*, No. 1:09–cv–01924–LJO–MJS (PC), 2012 WL 4049979 *1 (E.D.Cal.

Sep. 13, 2012).

Although another district court has found disclosure of prior reports to be discoverable

pursuant to a similar request, *ParkerVision, Inc. v. Qualcomm Inc.*, No.

3:11–cv–719–J–37–TEM, 2013 WL 3771226 (M.D.Fla., July 17, 2013), this Court finds that

Lind's speculation that the IME reports contain evidence of bias does not allow disclosure

of the IME reports so Lind can explore whether that speculation is true.   *See e.g.*, *Bernstein

v. Travelers Ins. Co.*, 447 F.Supp.2d 1100, 1102 (N.D.Cal.2006) ("It is Rule 26(b) that

supplies the directives that federal courts must follow when trying to determine how far

beyond clearly admissible evidence parties may cast their discovery nets.").   Indeed, the rule

applicable to disclosure regarding experts "was designed to prevent abusive 'fishing

1  expeditions' into the background of a testifying expert." 2 Discovery Proceedings in Federal

2  Court § 25:1 (3d ed. March 2014), *citing* Fed.R.Civ.P. 26(b)(4).   There is no basis to

3  reasonably conclude that the disclosure of the IME reports would lead to the discovery of

4  admissible evidence.

5    Accordingly, IT IS ORDERED Lind's request for the Court to order the disclosure

6  of all IME reports authored by Dr. Eskay-Auerbach is DENIED.

7    DATED this 27th day of June, 2014.

8

9

10            Cindy K. Jorgenson
           United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28